Robinson, J.
 

 The parties occupy the same relative position here that they did in the trial court and will be referred to as plaintiff and defendant.
 

 The facts pleaded, pertinent to the question here presented, are: That in the year 1908 the plaintiff owned nine shares of stock in the Timken Roller Bearing Company; that plaintiff and her husband, George C. Kimbark, now deceased, were indebted to the First National Bank of Canton, with whom the nine shares of stock were pledged as collateral security; that they were also indebted to the defendant in the sum of $500, and that George C. Kimbark, individually, was indebted to the defendant in the sum of $2,200; that plaintiff executed a transfer of the certificates of ownership of the nine shares of stock to the defendant company as collateral to the payment of said indebtedness; that in 1923 plaintiff tendered to the
 
 *163
 
 defendant full payment, with interest, of the indebtedness for which the nine shares of stock were pledged and demanded return of the stock.
 

 The defendant, by answer, admitted the transfer of the stock, admitted the indebtedness of George C. Kimbark to it in the sum of $2,200, the indebtedness of the plaintiff and George C. Kim-bark to it of $500, and the indebtedness to the bank of $1,100, admitted the tender of full payment, with interest, of the indebtedness to it and the bank, and its refusal to accept the tender and its refusal to surrender the stock, and averred that the stock was transferred to it absolutely, in payment of such indebtedness and certain other indebtedness, and averred certain other circumstances tending to explain the transaction.
 

 A reply was filed, and, for the purpose of the question here involved, the issue was whether the stock was transferred as collateral or transferred absolutely.
 

 Upon the trial, plaintiff called one H. H. Tim-ken, president of the Timken Roller Bearing Company, for cross-examination, who testified in substance that George C. Kimbark, in the absence of the plaintiff, had agreed to assign and transfer absolutely to the defendant company his one share and the plaintiff’s nine shares of stock in the Timken Roller Bearing Company in consideration of the cancellation of the indebtedness referred to in the pleadings, and that, acting for the defendant company, he, Timken, sent a Mr. Ernst, along with George C. Kimbark, to the Kimbark home to procure the assignment and transfer from the plaintiff of the nine shares of stock owned by
 
 *164
 
 her; that he sent him “as a special agent for our company, for a certain purpose.”
 

 The plaintiff also offered herself as a witness to prove that Mr. Ernst and her husband came to her home, and that her husband; in the presence of Mr. Ernst, did the talking; that her husband stated to her that it was necessary for them to “turn the stock over to Mr. Timken or the Tim-ken Company as collateral, * * * for the shortage and the $500 note,” and that he asked her “please not to ask any questions until later and he would explain the whole situation;” that thereupon Mr. Ernst, without comment as to the character of the transfer, produced a paper and asked her to sign it “to complete this transaction.” This evidence was excluded by the court upon the ground that the agency of Mr. Ernst was special and there had been no showing of authority in Mr. Ernst to do other than to accept an absolute transfer of the stock. Plaintiff also testified to a conversation, at the Courtland Hotel, with H. H. Timken, which she testified occurred shortly subsequent to the date of the surrender of her stock, in which conversation she asked Mr. Timken to retain her husband in his employ, stating to him that “it was going to be a very difficult matter for us.” She further testified that Mr. Timken refused and that she “told Mr. Tim-ken that we had no means of support, and that, since the stock had been turned over to bim as collateral, we would have absolutely no way of supporting ourselves, because Mr. Embark was without employment.” The following question was propounded and answered:
 

 
 *165
 
 “Mrs. Kimbark, at the time you had a talk with Mr. Timken at the Courtland Hotel, and you stated to him the stock had been turned over to him or his company as collateral, did he make any objection or any comment to that? A. He made no objection, but as I remember he said: ‘Yes;’ but he wouldn’t retain Mr. Kimbark.”
 

 The ownership of the nine shares of stock in the plaintiff prior to the transfer to the defendant was proven, the payment of the indebtedness to the bank by the defendant and the obtaining of the possession of the certificates of stock from the bank by it was proven, that defendant had thereafter treated the nine shares of stock as its own was proven, and the value of the stock was agreed upon.
 

 A motion to direct a verdict for the defendant was sustained.
 

 Two questions are presented here: First, did the trial court err in the rejection of the evidence as to the things doné and conversation had in the presence of Mr. Ernst and the plaintiff at the home of plaintiff? Second, did the trial court err in the direction of a verdict for the defendant?
 

 Passing first upon the admissibility of the evidence, it must be remembered that in the present state of the record the ownership of the nine shares of stock, prior to the visit of Mr. Ernst to the home of plaintiff, was in' the plaintiff; that whatever title the defendant acquired to that stock it acquired on that occasion and through Mr. Ernst, and that its subsequent possession of the stock certificates and control of the stock are referable wholly to that transaction.
 

 
 *166
 
 The pleadings of both plaintiff and defendant allege a contract; the defendant averring “that it was agreed by and between,” etc. The pleadings do not aver, nor does the evidence disclose, that the contract was in writing. That the assignment of the certificates of stock was in writing fairly appears from the evidence, but there is no intimation that the contract by and between the plaintiff and defendant was in writing. Since the pleadings disclose that both the plaintiff and defendant are relying upon a contract, which, upon the present record, was entered into on the occasion of the visit of Mr. Ernst, as agent in some capacity, to plaintiff’s house, and since, upon the present record, it appears that but one contract was entered into and that the contract averred by plaintiff and the contract averred by the defendant must necessarily have been the contract entered into upon this occasion, and the averment of its terms in the respective pleadings are but the separate recollection or interpretation of the respective parties, and it not appearing that the contract was in writing, it is essential that the court hear what was said and done on that occasion that it may determine from the evidence whether a contract was entered into at all, and if so, what were its terms. The fact that the authority of Mr. Ernst may have been special and limited, instead of general, does not affect the competency of the evidence, but affects only the consequence thereof or the conclusion finally to be reached; for instance, it, in connection with other evidence, may establish a contract. It may, in connection with other evidence, establish that no meeting of
 
 *167
 
 the minds of the contracting parties ever occurred, and, therefore, that no contract was entered into, or it may, in connection with other evidence, establish a fraud. But in any event, the things that were said and done on that occasion between or in the presence of the plaintiff and the defendant’s agent are
 
 res gestae,
 
 as well as links in the chain of events out of which the present status of the stock and the right of the parties to it must be determined, and in that connection the significance of the evidence of the conversation at the Courtland Hotel is not so much in the answer “Yes” as in the fact that it tended to prove notice to the defendant that Mr. Ernst had accepted the stock for defendant as collateral and that it had not thereby obtained an absolute title, and tended to prove a situation which imposed upon the defendant the responsibility of electing between rescission and ratification.
 

 The rejection of the evidence of the things , said and done in the presence of Mr. Ernst and the plaintiff was error prejudicial to plaintiff, for which the judgment of the trial court must be reversed. With that evidence admitted there was sufficient proof of the facts essential to the plaintiff’s recovery to carry the case to the jury. The direction of a verdict for the defendant was error.
 

 Judgment reversed.
 

 Marshall, C. J., Matthias, Allen and Kinkade, JJ., concur.