**SHAFFER v S S KRESGE CO**

Ohio Appeals, 2nd Dist, Franklin Co

No 2700. Decided Feb 6, 1937

Paul M. Herbert, Columbus, and George Austin, Columbus, for plaintiff.

Pomerene & Boulger, Columbus, and Harry Weaver, Columbus, for defendant.

**OPINION**

By BARNES, J.

The above entitled cause is in this court on appeal on questions of law from the Court of Common Pleas of Franklin County, Ohio. In the trial court the plaintiff appellee's cause of action was predicated upon claimed personal injuries sustained by reason of a fall down a stairway in a building owned or controlled by the defendant.

The amended petition upon which the cause was tried alleged that plaintiff while in the building as an invitee was about to descend a stairway from the second floor to the ground floor, tripped on a loose, upturned brass strip on the top step and fell headlong down the entire flight of about twenty-six steps landing at the bottom. The claimed negligence of the defendant was set forth as follows:

"That the defendant had placed and maintained rubber stair treads on the stairs and to hold the treads in place had bound them on the edges with narrow strips of brass metal. That the brass strip on the top step of the stairway leading from the second to the first floor had been negligent-'ly, wrongfully and carelessly allowed to become loose and turned up on the edge, of which condition the defendant had or by the exercise of ordinary and reasonable care should have had notice.

\* \* \*

"Plaintiff further says that the defendant was also negligent to-wit: (1) In failing to examine and inspect the stairway. (2) In failing to warn the plaintiff of the defect and unsafe condition of the stairway after the defendant had or by the use of reasonable and proper means should have had knowledge of the defective and unsafe condition of the stairway."

Plaintiff sought damages in the sum of $20,000.00.

In the trial the jury returned its verdict in favor of plaintiff in the sum of $20,000.00. On motion for new trial, the trial court ordered remittitur of $5,000.00 and plaintiff consenting thereto, the motion for new trial was overruled and judgment entered for the plaintiff in the sum of $15,000.00.

The motion for new trial sets out in detail twelve separate specifications of error. Each and all of these specifications are still insisted upon as appears from appellant's assignment of errors attached to original brief. The first assignment of error under subheadings (a), (b), (c), (d) and (e) attacks the sufficiency of the evidence to support any verdict and judgment against the defendant. In connection with the above we also discuss the weight of the evidence.

The determination of these grounds of error requires a very careful examination of the evidence as presented through the bill of exceptions and then applied to the issues as presented through the pleadings. The scope of this inquiry may be further classified as follows:

(1) Does the evidence support the claimed defect in the stairway?

(2) Did the defendant have notice, actual or constructive of such claimed defect?

(3) The weight of evidence on both.

In support of the claimed defects plaintiff presented herself and the following witnesses, Byron B. Beninghoff, Ben Moore, Mrs. Margaret Beninghoff.

The plaintiff previous to the accident has no recollection as to the condition or general manner of construction of the stairway in question. Neither did she immediately preceding the accident note or observe any condition. From other testimony it was conclusively shown that the steps of the stairs in question were covered with a soft rubber stair mat and these were held in place by a brass strip approximately one inch in width, tacked along the front edge of the step. It is the claim and sought to be shown that one of these brass strips so attached on the top step was loose and turned up so as to catch the heel of the plaintiff and causing her to fall.

The evidence is conclusive that she did fall and that she did sustain some injuries, the extent of which is in dispute.

Plaintiff in her testimony says that while she was proceeding down this stairs her heel seemed to catch on the first step causing her ankle to twist and throwing her forward and finally coming to a stop at the landing twenty-six steps below. From plaintiff's evidence, standing alone, there can arise no definite inference as to the specific thing or condition that caused her to fall. In other words, she neither saw nor knew any dangerous condition in the step.

Her statement that her heel caught at once suggests the further inquiry as to whether an examination of the steps immediately after the fall disclosed that the brass strip was loose and turned up at the edge as averred in the petition. Shortly after the fall plaintiff was assisted to the elevator and rode therein to the third floor and then was assisted to the place of business of her employer. After a time she went to the elevator for the purpose of going down to the ground floor and outside where she could get a taxi to take her home. In her examination in chief at page 56 of the record she says that she stopped at the second floor on her way down and looked at the step and stair leading from the second floor to the ground floor. In her cross-examination at page 119 she testifies that she stopped on her way up following her fall and injury. According to her testimony the stop at the second floor for the purpose of viewing the stair was at the invitation of the man running the elevator. She describes him as a little short man wearing glasses and further that she had seen him previously on the second floor cleaning. There is no further identification of this man either as to name or description. Plaintiff definitely says that it was not Ben Moore, the assistant janitor,

although her witness, Ben Moore, testifies that he took her up in the elevator after the fall and brought her down when she was ready to leave the building to take a taxi to her home. Plaintiff's witness, Byron B. Beninghoff corroborates the testimony of Moore as did one or two of defendant's witnesses. Plaintiff in substance gives the following narrative as to her view of the stairs and step following the fall. She first says this little short man with glasses stopped the elevator and asked her to come to the stairs so that he might show her how she fell. The leather tap on the heel of her shoe had been pulled off. This elevator man had the tap in his hand and she says he pushed it under the brass strip a little teenie bit as indicating where her heel had caught. She also stated that the brass strip at this point protruded in one little part. The query would at once arise as to whether or not this situation as testified to by defendant raises an inference that it was an existing condition before the fall or just as inferable that she struck her heel on the edge of this brass strip in the act of falling and lifted it in this one little part and thereby pulled the leather tap off of the heel of her shoe. Ben Moore, a janitor at the building on the evening of the accident was called by plaintiff as a witness and testified that he was the operator of the elevator before, at the time of, and after the accident; that he took the plaintiff up in the elevator to the business rooms of her employer and later brought her down. According to his testimony he did not stop with plaintiff either on the way up or on the way down. He says that he found the heel tap lying flat about the center of the fourth or fifth step but not under a brass strip or anything else. He also testifies that he examined the steps from top to bottom in his effort to find if they were in any sense out of repair and found nothing out of order. Later he went over the steps with Pat Cook, a fireman of the building, but nothing was found out of condition. Mr. Byron B. Beninghoff was also called as a witness for plaintiff. He was a representative of the Hoyt Company and was in charge of their place of business on the third floor of the building in question and in his representative capacity was the employer of the plaintiff, Mrs. Shaffer. He testifies that he examined the steps the same evening following the accident in company with Mr. Ben Moore, the janitor. This is denied by Moore. Beninghoff says that at this time the brass strip at the top

step was raised about an eighth of an inch and that Moore pushed it down with his hand, but that it would naturally fly back up; that it would not stay down. Further along in his testimony he stated that this was the same condition that it had always been in for the two or three years that he had been in the building. He says that the brass strip would naturally spring up between the tacks where they were placed every so far apart. He states that the elevation was about an eighth of an inch. He also in a very unsatisfactory and indefinite manner gives testimony of other slipping or falling of numerous other people. In cross-examination it develops that he has personal knowledge about another woman catching her heel and spraining her ankle. In some parts of his testimony he indicates that the previous near accidents were from slipping by reason of the brass strip being very smooth. He later gives testimony of a near accident happening to his wife before he was married to her. It was stated that she caught her heel on one of the tacks that was loose and elevated about an eighth of an inch on the second step.

On the question of knowledge, either actual or constructive, on the question of the defect of the step on which plaintiff fell, this witness Beninghoff and none other offers testimony, somewhat indefinite and uncertain, first stating that he complained to the head janitor, assistant janitor, or elevator girl. Later he is rather positive that he made complaint to the assistant janitor and also to the head janitor. Both denied that he ever made any complaint to them. Parts of his testimony indicate that the only complaint he made was as to slipping on the steps by reason of the brass strip being smooth. In other parts of his testimony it is inferable that he complained about the raised condition in the metal strip, or the loose tack on which his wife caught her heel. Taken as a whole his testimony is very unsatisfactory.

Plaintiff also called as a witness Mrs. Margaret Beninghoff, wife of Byron Beninghoff. She gave a recital of a near accident that she had some time previous which occurred on the second step in this stairway due to one of the tacks or nails being loose and lifted about an eighth of an inch. She did not fall forward but sat down and then had an opportunity and did look intently at the tack. She reported this fall to her husband. The defect complained of by Mrs. Beninghoff is different from that set out in plaintiff's petition. There was no evidence of a loose nail or

tack at the time of plaintiff's accident. Therefore it would appear that if any such defect existed it was corrected.

Further referring to plaintiff's testimony as to what was said and done by the small man wearing glasses who she says took her to the stairs showing her the heel tap and where it was under the brass strip on the first step, can not be accepted as substantive evidence against the defendant. This individual, whoever he may be, was not identified as an employee of the defendant. Any statement that he may ██ have made would be purely hearsay. Such evidence could only be introduced by bringing the individual in as a witness. The defendant presented a boy as a witness who on the night in question was doing cleaning on the second floor but he was not identified as the individual to whom plaintiff referred. This boy was not an employee of the defendant, but was an employee of the head janitor who on the day in question was absent attending a funeral in another state. This boy was called by defendant as a witness and according to his testimony he had nothing to do with the operation of the elevator nor did he operate the elevator on the day or night of the accident. Inquiry was made of this witness as to whether or not he went with the plaintiff to the stairs to show her anything about the accident. His testimony was that he did not. Of course the testimony of the plaintiff as to what she claimed she saw and observed on this evening following the accident would be competent and substantive evidence.

Plaintiff presents no other testimony as to the condition of the steps at the time of the accident or immediately following, other than herself and the two witnesses, Moore and Beninghoff. The shoe that plaintiff claimed to be wearing at the time of the accident is attached to the bill of exceptions as an exhibit. The heel tap, about an eighth of an inch in thickness, was in the possession of the assistant janitor, Ben Moore, and was identified and introduced in evidence and was attached as an exhibit. It is a matter of common knowledge as to the manner in which people of ordinary prudence walk down stairs. The usual and safe method is bearing the weight of the body on the ball of the foot. The toe might extend a little over the edge of the step. This would vary somewhat depending on the width of the step and also in different individuals. It would hardly be the proper method of walking downstairs to place the heel within an inch of the outer edge. We have all had experience of stumbling or slipping on steps. The most usual method is through dragging the foot and the heel striking the edge before it is clear, or overstepping so that the ball of the foot misses the tread.

Considering the testimony in its most favorable light to the plaintiff the writer of this opinion is inclined to the view that the plaintiff had failed to show a right of recovery. The majority do not hold to the view that we should enter final judgment. We also find ourselves in disagreement on the question of notice, actual or constructive. Of course if there was a defect in the original construction and remaining for two or three years, defendants would be charged with constructive notice. This question arises through testimony of Mr. Beninghoff wherein he stated that the conditions had remained the same during the entire time he had been in the building some two or three years. His explanation was that there was a spring in the brass strip between the nails or tacks so that between the strip would spring up a little bit.

Relative to the claimed notice through the testimony of Mr. Beninghoff wherein he states he talked to one or both of the janitors, even if it be stated that his talks or complaints related to the defects as complained of in plaintiff's petition, there still remains a question as to whether or not the janitors were the agents of the defendant to whom complaints could properly be made.

The rule is well stated that notice to an agent is notice to his principal on all matters that are within the scope ██ of the agent's employment. Citing 26 O. J., p. 651. The evidence is uncontradicted that the management and control of defendant's building had been placed in charge of William P. Zinn & Company. In their employ was one George H. Gugle, Jr., who was their representative and had actual charge and management of the building and who looked after the repairs and upkeep. All repairs were made upon his order. Mr. Gugle testifies that there never was brought to his attention either directly or indirectly any complaints as coming from Mr. Beninghoff. The janitor in the building. as the term implies, looks after the cleaning. In big buildings this may be limited to the hall, stairway, elevator, etc. Would the fact that they cleaned stairways standing alone necessarily put them in charge of repairs? In some instances of course the work of the janitors might include repairs. The uncontradicted evidence in the instant case was

that the janitors had nothing to do with repairs. It is probably true that a janitor in his work of cleaning stairways would be in position to observe de- fects and his loyalty and in- terest in his employment might prompt him to give notice of any defects to the proper authority, but the query still remains as to whether or not this in any way would constitute him the proper agent of the owner upon whom notice of defects could properly be given so as to bind the principal.

The record presents evidence that the stairs were examined for defects immediately following the accident. Plaintiff's witness, Ben Moore, and defendant's witness, Pat Cook, a fireman in the building, testified that they together went over the steps on this stairway immediately following the accident and found no defects of any kind or character. Each directly and specifically testified that the brass strips on the steps were not raised up. George Gugle, Jr., the property manager of the building, testified that he examined the steps the following morning and that there was no defect such as complained of by plaintiff in her petition or of any other character. The head janitor, James S. Jackson, testified in substance that the day before the accident he went up and down these steps in going about his work and that there was no defect such as complained of or of any other kind.

Considering the verdict as a whole the court is unanimously of the opinion that the verdict was against the manifest weight of the evidence. This conclusion renders it unnecessary to discuss in detail the many other claimed errors.

Referring to the claim of misconduct of counsel it is hardly probable that such a situation would arise in the new trial. Some of the statements made by counsel for the plaintiff in his argument are on the border line. The answer brief indicates that these remarks were prompted by virtue of certain statements made by counsel for defendant. These statements are not in the record and hence we have no means of knowing their exact nature. We volunteer the suggestion that in the retrial counsel confine their argument to matters contained in the record. By so doing the verdict, however returned, would not be jeopardized.

The claimed error in the introduction of testimony is not thought to be prejudicial although the court might properly con-

fine the inquiry more directly to the stairs and the defects complained of. Several pages of the brief are directed to claimed errors in the charge of the court. It is our conclusion that the charge is very full, complete and correctly states the law. We find no errors in the charge. We find no other prejudicial errors.

The judgment and order of this court is that the cause be remanded to the Court of Common Pleas for new trial. Costs of the proceeding in this court will be adjudged against the plaintiff.

Exceptions are allowed.

CRAIG, PJ, and HORNBECK, J, concur in judgment on the sole ground that the verdict and judgment are manifestly against the weight of the evidence because of the ambiguity in the testimony of Byron B. Beninghoff upon whom proof of two material elements of plaintiff's case depends.