## PUGH v AKRON-CHICAGO TRANSPORTATION CO.

Ohio Appeals, 3rd Dist, Allen Co.

No. 781. Decided March 2, 1940.

Conn, Stroup & Spahr, Van Wert; Walter S. Jackson, Lima, for plaintiff-appellee.

Cable & Cable, Lima, for defendant-appellant.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Allen County, Ohio, in an action pending therein wherein Alice Pugh was plaintiff and Akron-Chicago Transportation Company was defendant.

The action is one for damages for personal injuries alleged to have been sustained by plaintiff through the negligence of the defendant while plaintiff was riding as a guest in an automobile driven by her husband, in a collision between the automobile and a tractor trailer truck operated by the defendant under a certificate issued by the Public Utilities Commisson of Ohio, the tractor trailer truck at the time of the collision being parked upon a public highway in Allen County, Ohio.

The case was tried to a jury which returned a verdict in favor of the plaintiff in the sum of forty-three hundred and fifty dollars, and it is from the judgment entered on this verdict this appeal is taken.

The facts of the case necessary to a consideration of the appeal as they appear from the record are as follows:

Between two and two-thirty o'clock on Sunday morning, March 6, 1938, J. C. Cable, a driver employed by defendant, Akron-Chicago Transportation Company the holder of a certificate as a motor freight carrier issued by the Public Utilities Commission of Ohio, operating a tractor trailer for it, was proceeding easterly with said truck on U. S. Route No. 30N, in Allen County, when a puncture occurred in one of the dual tires on the right rear of the tractor. The driver being unaware of the fact the puncture had occurred continued to drive the truck for some distance in an easterly direction after the occurrence, with the result of a blow-out occurring in the other dual tire on the right rear of the truck, presumably caused by the additional weight this tire was subjected to by reason of the puncture in the other dual tire. When the blow-out occurred the driver parked the truck at a point 1.8 miles west of Beaverdam, Allen County, on said route which is the main east and west thoroughfare in this part of the county.

At the point where the driver parked the truck the highway is paved with concrete to a width of eighteen or twenty-two feet with an almost level berm approximately eleven feet in width on the south side of the pavement. There was a farm driveway some two or three hundred feet west on the north side, a similar driveway thirteen hundred and fifty feet east on the south side, and a paved cross-road four hundred and ninety-five feet east of the place where said truck was parked.

The truck was parked on the pavement with the left wheels six inches south of the center line.

There were two sizes of tires on the equipment. The tires on the tractor were 750's and the tires on the four dual wheels of the trailer were 975's. But one spare tire (disputed) for each of these sizes was being carried.

It being necessary to operate the equipment with dual tires the driver placed flares (disputed) and caught a ride back to the Dutch Mill about seven miles east of Van Wert and twenty-five miles west of the place where the car was parked, for the purpose of securing a new tire. He left the truck in charge of a helper of one day's employment who went to sleep in the cab. The driver arrived at the Dutch Mill at about four o'clock A. M. and remained there for seven and a half

hours, the truck and trailer standing on the highway a total of approximately nine hours before the collision hereinafter mentioned, and eight hours thereafter.

It being Sunday it was difficult to obtain a tire of the 750 type and the driver endeavored to locate the size tire he needed, from other tractors and trailers stopping at the Dutch Mill, and by telephoning to different localities, but was unable to obtain a tire of the size that he required, up to about ten-thirty in the morning, when he received a telephone call from the Lewis farm adjacent to highway at the place the truck was parked to the effect that there had been an accident. He proceeded at once to the point where the tractor and trailer were parked, and testified that as he approached the scene of the accident from the west he observed a burning flare which he had placed west of the car, and pushed it off the pavement and onto the berm.

There was some controversy concerning the fact that any flags or flares had been placed as required by the rules and regulations of the Public Utilities Commission, and also some question as to whether the driver could have proceeded on his "flats" to the driveways and said road mentioned, and there parked his equipment. There is also a dispute as to whether the berm of the road at the place he parked his equipment was hard enough to be used for the parking of the equipment.

The plaintiff Alice Pugh and her husband Max Pugh and plaintiff's mother Mrs. Cleland that morning had decided to go from Van Wert to Ada, Ohio, to attend a birthday dinner for Max Pugh and another relative, and proceeded easterly along U. S. 30N from Van Wert and when at a point about a half mile from the place where the tractor and trailer were parked, Max Pugh the driver, noticed the tractor and trailer and as he came near, about a quarter of a mile from this point, near the Lewis farm, he could see the tractor and trailer were parked on the highway. It was broad daylight, between eleven and eleven-thirty A. M.,

and one witness testified it was a bright sunny day.

As the Pugh car came closer to the parked equipment another car passed the Pugh car also going east and traveling at a rate of about sixty miles an hour and proceeded at the same speed in passing the tractor and trailer and was out of sight when Max Pugh driving his Chevrolet sedan with his wife in the front seat and Mrs. Cleland in the back seat slowed down in front of the Lewis farm and stopped forty feet behind the trailer and tractor to allow traffic going in a westerly direction to pass the tractor and trailer, before attempting to go around the place where the equipment was parked.

Pugh, after he slowed down and stopped at a point forty feet back of the trailer, threw out the clutch of his car, then threw the car out of gear, let the clutch back in, took his foot off the brake, then reached up to his mouth and took a pipe he was smoking, out of his mouth and laid it down on the seat between himself and his wife, then pushed in the clutch preparatory to starting up after the traffic passed to the west.

A very short period after Pugh had stopped, estimated by one witness as ten seconds, and while the Pugh car was waiting as above mentioned, one Hugh Raglan driving in an easterly direction presumably at a high rate of speed failed to slow down and stop his car as Max Pugh had done, but instead forcibly and violently crashed his car into the rear end of the Pugh car which impact from the rear forced the Pugh car (Pugh not having his foot on the brake) east and into the back end of the trailer, and as a result of the excessive force of this collision the plaintiff sustained a very badly fractured and dislocated left ankle and a very badly sprained right ankle and some cuts and bruises by reason of her head being thrown into the windshield when the Pugh car hit the trailer.

By reason of these injuries the plaintiff was confined to the hospital for eighteen days and on account of the dislocation of the fractured ankle it was necessary for her to undergo an

open operation to set the dislocation, about eight days after the accident, and from that time on for a period of seventy-three days the ankle was in a cast. Due to an exostosis flowing from the fractured part during the time it was knitting, a bony substance was formed which has caused a permanent disability in the flexion of the foot. Plaintiff was compelled to have a house-maid for twelve months at a cost of four dollars per week, plus board and room; lost nine hundred dollars in earnings up to the time she returned to part time work, and expended more than three hundred and eighty-seven dollars and fifty cents for medical, sur-gical and hospital services. She was on crutches for five months and on a cane four months.

The collision happened in March, 1938, and in the fall of that year the plaintiff obtained employment at the Marsh Foundation at Van Wert, Ohio, teaching dramatics and other pre-scribed courses and also teaching mu-sic at her home, and although handi-capped by reason of the condition of her injured ankle was able to earn more money than previous to her in-jury.

The defendant assigns errors in the following particulars which will be con-sidered in the order mentioned.

1. That the judgment of the Court of Common Pleas is contrary to law and against the weight of the evidence.

2. Error in overruling motion of de-fendant for a directed verdict in its favor after the plaintiff rested her case and also at the close of all the evidence.

3. Refusal of the trial court to grant judgment on motion of defendant not-withstanding the verdict.

4. Prejudicial error in the admission of testimony offered by plaintiff.

5. Prejudicial error in the exclusion of evidence offered by defendant.

6. Error in submitting to the jury plaintiff's request to charge No. 2.

7. Error of the trial court in refus-ing to charge the jury defendant's re-quests to charge before argument Nos. 1, 3, 8.

8. Error pejudicial to defendant in the charge of the court.

9. Error in that verdict is excessive, due to passion and prejudice.

1-2-3. The assignments of error that the judgment is contrary to law and is against the weight of the evidence, the overruling of defendant's motion for a directed verdict, and refusal to grant motion of defendant for judgment not-withstanding the verdict, are based solely on the contention that in the event the evidence tends to prove neg-ligence on its part, that such negli-gence was not the proximate cause of the collision between the tractor-trail-er operated by it, and the automobile in which the plaintiff was riding, and the injuries resulting therefrom to plaintiff, but was either no cause or a cause so remote to any negligence that could be attributed to the defendant that the plaintiff's injuries were not a result thereof; and that if there was any negligence of the defendant the evi-dence clearly shows that there was a proximate definite intervening cause which the defendant could not have reasonably anticipated under any cir-cumstances, to-wit: That Hugh Rag-land would be so operating his car in a negligent manner along the highway as to run into and collide with a parked car on the highway after this car had been parked in such a position more than ten seconds and drive said parked car forward a distance of forty feet, from which rear end collision the dam-ages and injuries to the plaintiff were sustained.

The rule applicable to plaintiff's con-tention has been stated substantially as follows:

To relieve a person from the conse-quences of his negligence ▓▓▓▓▓▓ ▓ it is not enough that the negligent act or omission of another was nearest in the order of events to the injury, nor that with-out it the injury would not have oc-curred; to have this effect it must have been the efficient, independent, and self-producing cause, disconnected from the negligence of the first person. **Pennsylvania Railroad Co. v Snyder, 55 Oh St 342-359.** The causal connection is not broken, "if the intervening event is one which might in the natural

course of things be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." Shearman and Redfield on Negligence, §32 (4th ed.).

A more modern and accurate statement of the rule is set forth in Restatement of the Law of Torts, Volume 2 at page 1196, as follows:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Negligent acts of drivers of motor vehicles of the same character as the negligent act of Hugh Ragland in causing the motor vehi- cles driven by them to collide with other motor vehicles stopped ahead of them on the highway because of the obstruction of the highway by cars stopped ahead, forcing ahead the motor vehicles with which they have collided so that they in turn collide with the motor vehicles stopped ahead of them, are as a matter of common knowledge of common occurrence.

It therefore cannot be held as a matter of law that the negligent act of the driver Ragland is one which might not in the natural course of things be anticipated as not entirely improbable; nor that the driver of defendant's truck in stopping as he stopped should not have realized that a third person

might so act; nor that a reasonable man knowing the situation existing when the act of the third person was done would regard it as highly extraordinary that the third person had so acted; nor that the intervening act is not a normal response to a situation created by the actor's conduct and the manner in which it is done is extraordinarily negligent.

For the reasons mentioned the question as to whether Ragland's negligence was the proximate cause of the collision between the automobile in which the plaintiff was riding, and the trailer-tractor operated by the defendant, was a question for the jury and not for the court.

There is competent, credible and substantial evidence tending to prove negligence on the part of the defendant as charged in the petition, of such a character as in law to constitute a substantial factor in causing plaintiff's injuries and also to constitute an essential link in the chain of causation. Whether such negligence existed and whether it constituted a proximate cause of plaintiff's injuries were questions of fact for determination of the jury. The question of the contributory negligence of plaintiff was also a question for the jury.

The judgment therefore is not contrary to law and the court did not err in overruling defendant's motion for directed verdict and in overruling defendant's motion for judgment notwithstanding the verdict; and the judgment is not against the weight of the evidence.

4. Under the assignment of prejudicial error in the admission of testimony offered by plaintiff, the defendant claims error in the admission of the testimony of Max Pugh one of the plaintiff's witnesses, relating to a conversation had by him with the helper on defendant's truck, immediately following the collision, and a conversation between the helper and a state patrolman occuring some time after the collision.

One of the defendant's objections to the testimony of the conversation be-

tween Max Pugh and the helper, is that there is no evidence tending to prove that either the driver or the helper were employees or agents of the defendant. This objection is without basis as there is in evidence certified photostatic copies of the Public Utilities Commission's certificate issued to defendant as a motor transportation company under the laws of Ohio, restricted to interstate commerce, bearing the same numbers carried by the truck at the time of the collision. There is also the testimony of one J. D. Cable that he was employed by defendant as the driver of the truck at and preceding the time of the collision and that the helper who accompanied him and whom he left in charge of the truck after the collision, was also so employed. The fact of agency may be established on trial by the testimony of the agent himself. **1 O. Jur. 638.**

The evidence mentioned therefore tended to prove the employment of both the driver and the helper.

Defendant's other objections to the testimony as to the conversations mentioned, are that admissions of the helper, if an employe or agent of the defendant, are not binding on the defendant, and that the admission of such testimony violated the hearsay rule. These objections are well taken if anything appears in the testimony relating to the conversations, prejudicial to defendant.

An examination of the testimony as to the conversation between Pugh and the helper discloses that it relates to facts which are otherwise in evidence and not in dispute, and consequently the admission of this testimony was in no way prejudicial to defendant and its admission did not costitute error warranting reversal of the judgment.

An examination of the testimony as to the conversation between the state patrolman and the helper discloses that it occurred some time after the collision and relates to the patrolman directing the helper to get warnings out, to get flags, flares, warnings out right away.

From other uncontroverted evidence in the record it appears that no flags had been put out until after the collision. There is a direct conflict in the evidence as to whether lighted flares were in position at and preceding the collision. There is no evidence that warnings of any other type were put out at and preceding the collision.

The conversation between the patrolman and the helper occurred some time after the collision and must be considered in connection with conditions as they existed at the time the conversation occurred.

The claim on the vart of plaintiff, of negligence on the part of the defendant in failing to put out flares, flags and other warnings, related to the time preceding the collision. The direction given by the patrolman, above mentioned, was given subsequent to the collision and consequently did not reflect on conditions as they existed at and preceding the collision.

Furthermore as shown by the undisputed evidence in the case, the driver of the automobile in which plaintiff was riding, at and preceding the collision in which plaintiff sustained her injuries, saw the trailer truck of defendant when he was at a distance of a half mile from it, and when he came within about a quarter of a mile from it could see that it was parked on the highway, and thereafter stopped his automobile forty feet behind it. Upon this state of facts the neglect, if any, of the defendant in not putting out flares did not affect the conduct of the plaintiff or of the driver of the automobile in which plaintiff was riding and therefore did not in law constitute a proximate cause of plaintiff's injuries. Whether such neglect, if any, affected the conduct of the driver of the automobile which collided with the automobile in which plaintiff was riding, is not material insofar as the liability of the defendant is concerned, as irrespective of whether his conduct was affected by such neglect the defendant was liable to plaintiff by reason of its negligence in the other respects charged in the petition and supported by the evidence.

The testimony as to the conversation therefore did not bring into the evidence any fact upon which the liability of the defendant is dependent, and considering the record as a whole the admission of the testimony did not constitute error prejudicial to the defendant, warranting the reversal of the judgment.

5. Under the assignment of prejudicial error in the exclusion of evidence offered by defendant, the defendant cites objections sustained to certain questions in the cross-examination of the witness Max Pugh.

An examination of these questions discloses that each and all of the questions called for answers of conclusions of ultimate facts which it was the sole function of the jury to determine, and consequently the court did not err in sustaining objections to the questions, and excluding the evidence.

6. The sixth error assigned is in submitting to the jury, Plaintiff's Special Request to Charge, No. 2. The request mentioned is as follows:

"Ladies and Gentlemen of the Jury: I charge you, as a matter of law, that it is not essential to the liability of the defendant that its negligence should be the sole cause of the injuries to the plaintiff, but if the injuries of the plaintiff were produced by the negligence of the defendant and one or more other parties, any one of the parties contributing a necessary condition to the result which produced the injuries can be held responsible at the election of the party injured and the party which the plaintiff elects to hold responsible cannot claim exoneration on account of the fault of another."

This request to charge is taken almost verbatim from 29 O. Jur., page 491, §73, and is based on a sentence in the opinion in the case of **Pennsylvania Railroad Co. v Snyder, 55 Oh St 342 at page 359**, which is almost identical in phraseology.

The objection to this request to charge is that it is not conditioned on the negligence of any of the parties named in the charge being a proximate cause of the accident.

As used in the charge, the phrase "but if the injuries of the plaintiff were produced by the negligence of defendant and one or more other parties, any one of the parties contributing a necessary condition to the result which produced the injuries can be held responsible at the election of the party injured", means identically the same as the more modern phrase "but if the injuries of the plaintiff were proximately caused by the negligence of the defendant and one or more other parties, any one of the parties contributing a negligent proximate causal factor to the result which produced the injuries can be held responsible at the election of the party injured".

The request to charge was therefore correct and the court did not err in submitting it.

7. The seventh assignment of error is of the trial court in refusing to charge Defendant's Requests to Charge before argument Numbers 1, 3 and 8.

Defendant's Request to Charge, Number 1, is as follows:

"Members of the Jury: I charge you that §6310-27 GC is as follows: 'No vehicle shall stop on any road or highway, except with front and rear right wheels within one foot of the right hand side of the improved portion of the road, nor in any such way as to obstruct a free passage of the road; provided that nothing in this section shall be held to apply whenever a driver of a vehicle is compelled or permitted to stop by reason of other lawful regulations, or emergency,' and if you find that the driver of the defendant's tractor and trailer stopped the vehicle on the pavement with its right wheels within one foot of the right and south edge of the pavement, then I charge you that such stopping and parking is lawful, and defendant is therefore not chargeable with any negligence by reason of such parking."

In order to determine the correctness of this charge it is necessary to consider the proper construction to be placed on the provisions of the section mentioned.

Broken down, the section contains two separate and independent prohibitions each of which constitutes a specific requirement of law the violation of which constitutes negligence per se, to-wit: First. No vehicle shall stop on any road or highway except with the front and rear wheels within one foot of the right hand side of the improved portion of the road. Second. No vehicle shall stop in any such way as to obstruct a free passage of the road. It further contains a proviso excluding motor vehicles from the operation of said prohibitions under circumstances prescribed therein, the proviso being as follows: "Provided nothing in this section shall be held to apply whenever the driver of a vehicle is compelled or permitted to stop by reason of other lawful regulations or emergency".

The first prohibition is so clear and explicit as not to require definition or construction.

Free passage of the road, in the sense it is sued in the second prohibition, means free passage of vehicles in the ordinary course of traffic on the improved portion of the road that is, the unconfined and unrestrained passage of vehicles moving in one direction past vehicles moving in the same or in an opposite direction on the improved portion of the road, and this prohibition contemplates a sufficient width of the improved portion of the road being left unobstructed to permit the free passage of motor vehicles in separate adjacent lanes of traffic.

Consequently where there is not sufficient room on the improved portion of a highway to permit the stopping of vehicles in the manner provided in the first general prohibition, and in such a manner as not to obstruct the free passage of the road, as above defined, as prescribed in the second prohibition, vehicles, by the provisions of the section, are prohibited from stopping except under the circumstances prescribed in the proviso.

The "other lawful regulations" referred to in the proviso by reason of which a motor vehicle is compelled or permitted to stop are the regulations adopted pursuant to law by the Public Utilities Commission of Ohio relating to public and private motor vehicle carriers.

The word "emergency" as used in the proviso is not defined so it must be considered as used in its ordinary sense as "An unforeseen combination of circumstances which calls for immediate action, also, less properly, exegency."

An emergency is transitory in character and when the emergency ceases the stopping of a vehicle upon the highway comes within the prohibitions of the section and the proviso ceases to be applicable, and when under all the facts and circumstances of the case a reasonable time has elapsed to overcome the emergency compelling or permitting the stopping, the emergency will be considered in law as having ceased and the prohibitions, not the proviso, of the section are then applicable.

The undisputed evidence in the instant case shows that the width of the improved highway was such that the defendant's tractor-trailer could not be parked on it except in violation of the second prohibition mentioned, and consequently any right the defendant had to stop it on the highway in the manner it was stopped, is entirely dependent upon whether such stopping comes within the proviso of the section.

That part of the request to charge following the quoted section of the General Code is therefore not correct because not predicated on the jury finding that the driver of defendant's tractor and trailer was compelled or permitted to stop by reason of other lawful regulations or emergency, and

the court did not err in refusing to give it.

With reference to the refusal of the trial court to charge numbers 1, 2 and 8 of defendant's special requests to charge before argument, the bill of exceptions shows that the defendant by its counsel "presented to the court, in writing, the following special requests and asked that the same be given to the jury, before argument, in its behalf." Following this recital appear the eight special instructions requested, including number one above mentioned, and numbers two and eight which were refused. No other or different request on behalf of the defendant to submit special instructions appears in the record.

Where the record does not disclose whether a request for certain instructions to be given before argument was that such instructions be given as a whole or separate, error can not be predicated on the refusal to give them if, taken as a whole, they are improper in form and some of them are improper in substance. **Green v Wilson Sand & Supply Co., 6 Abs 294.**

"There is a presumption that several special requests for instructions, when not offered as several and independent propositions of law, are offered as a series; and if one of them 'fails to state a correct proposition of law applicable to the facts of the case, it is not error for the court to refuse all of them." **Kalamazoo Stove Co. v May, 16 Abs 498.** See also, 2 O. Jur. 1008.

As the above quoted No. 1 request to charge was incorrect, the court irrespective of whether the other instructions were correct or not, did not, under the rules above mentioned, err in not submitting the other instructions, the refusal to submit which is complained of, as such requests were not offered as several and independent propositions of law.

8. The next assignment is error prejudicial to the defendant in the charge of the court.

Under this assignment the defendant claims error in the court charging the provisions of §§6310-22 and 6310-27 GC, the charge on the provisions of §6310-27 following the charge on the provisions of §6310-22 GC.

**Sec. 6310-22 GC,** was applicable to the conduct of the driver of the automobile in which the plaintiff was riding as a guest, and also applicable to the contributory negligence of the plaintiff, if any.

The provisions of §6310-27 GC, were applicable to the conduct of the defendant in stopping his car upon the highway.

In other parts of the charge the application of these sections is accurately stated, and taking the charge as a whole the instruction complained of was not erroneous.

The defendant further contends that the court erred in charging that violations of both of the sections mentioned is negligence per se, when, as the defendant contends, the violation of §6310-27 is not negligence per se under the conditions as they exist in the record of the case.

As we have already stated in this opinion, §6310-27 GC, contains two specific requirements the violation of which constitutes negligence per se, and a proviso excluding vehicles from the operation of the statute under circumstances therein prescribed.

It was for the jury to determine whether the proviso was applicable to the circumstances of this case. If applicable, the defendant had not violated the provisions. On the other hand, if said proviso was inapplicable the violation of the provisions of the section constituted negligence per se as charged by the court, and the court's charge in this respect was not erroneous.

The defendant further contends that the trial court placed an unwarranted burden on the defendant in giving most particular emphasis to the Public Utilities Commission regulations and upon a failure of the defendant to comply therewith.

We have examined this portion of the charge and find it is accurate, and

no undue emphasis is given in the particulars complained of.

9. The ninth assignment is that the verdict is excessive, due to passion and prejudice.

The evidence as to the extent of plaintiff's injuries fully supports the amount of the verdict and it does not appear that the same is excessive.

For the reasons mentioned, we find no error in any of the particulars assigned and argued in the brief of the defendant-appellant, and the judgment will therefore be affirmed at its costs.

The conclusion which we have reached with reference to the construction to be placed on the prohibitory provisions of this section is in direct conflict with a judgment pronounced upon the same question by the Court of Appeals of the Eighth District, in the case of **Hileman v Portage Lakes Transportation Company,** decided July 25, 1938, reported in **30 Abs 207, issue of February 17, 1940,** and for this reason this case will be certified to the Supreme Court of Ohio for review and final determination.

CROW, PJ. & KLINGER, J., concur.