**NEW YORK LIFE INS. CO. v.
SEIGHMAN.
No. 9560.**

Circuit Court of Appeals, Sixth Circuit.

Feb. 15, 1944.

J. R. Kistner, of Cleveland, Ohio (J. R. Kistner and R. M. MacArthur, both of Cleveland, Ohio, on the brief), for appellant.

C. N. Krieg, of Cleveland, Ohio (M. C. Harrison, C. N. Krieg, and Harrison & Marshman, all of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

In this case a judgment was rendered on a jury verdict in an action for personal injuries. Appellant contends that reversible error exists in the admission of testimony and in the charge of the court.

Appellee, an employee of a plumber engaged in doing work at an apartment house owned and operated by appellant in the city of Cleveland, Ohio, was injured by falling from the fourth floor landing of the rear stairway located outside of the building. Appellee contends that the accident was caused by the defective condition of the railing around the fourth floor landing or platform. This railing consisted of a two-by-four some ten feet long, nailed and screwed at one end into an upright post and at the other end mortised and plastered into the brick wall for an inch and a half or two inches. Three witnesses, including the then custodian of the apartment house, testified that the railing was rotten for some eight to ten inches from the post. While appellant's carpenter denied that the railing was rotten, he admitted that immediately after the accident it was pulled away from the post.

At the time appellee and his employer were running a water pipe up the back of the apartment wall about three inches outside the railing which guarded the stairway landing for each floor. Successive joints of pipe were placed in vertical position along the wall and later fastened with clamps. Appellee had installed a spigot at the end of the pipe on the fourth floor. Noticing that the spigot was not straight, he stepped over to the railing and attempted to straighten the pipe with a wrench. He testified that he did not recall leaning against the railing, and that the next thing he remembered he was lying forty feet below, on the ground. The railing had pulled away from the post and fallen over onto the floor below. Appellee suffered lacerated wounds in the occipital region, a mild concussion of the brain, an injury to his spine, comminuted fractures of the left pubis end of the left ischium (that is of the pelvis), and comminuted fractures of two bones of each foot.

Appellant contends that its motion for directed verdict should have been sustained because of the fact that appellee did not testify as to the exact circumstances which caused the accident. We think that this contention has no merit here. Either the railing was rotten or it was so insecurely fastened at the post as to be torn away. It fell simultaneously with appellee, for it was found hanging down over the

next floor by the custodian and other witnesses immediately after the fall. The jury was entitled to infer from the position of the spigot, three inches from the railing, and the fact that appellee was working over the railing with a wrench, holding the pipe with his left hand, that unconsciously he placed his weight against the railing and that in its rotten and insecure condition it proximately caused the accident. The verdict of the jury shows that this was in effect the finding. This was not, as contended, an inference upon an inference, but an inference from proven facts.

 The District Court did not err in admitting testimony as to a similar occurrence prior to the accident, namely, that another plumber working on the third floor complained that he leaned against the similar railing and it started to give way. Such evidence is relevant as tending to show the dangerous condition of the premises, and appellant's knowledge of such condition, if it relates to an occurrence which happened under substantially the same conditions at substantially the same place as the accident in suit and at a time not too remote therefrom. Sears, Roebuck & Co. v. Copeland, 4 Cir., 110 F.2d 947; Illinois Central Railroad Co. v. Sigler, 6 Cir., 122 F.2d 279, 284; Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Here the stairway was continuous, and is shown by the photographs in evidence to have been of the same structure with a landing on each floor, guarded by a railing set into the wall and affixed to a post. The stairway was on the outside of the building and exposed to the inclemency of the weather, and as the building was some thirty years old, it is evident that both railings were similar parts of a structure, liable to fall into disrepair if neglected by persons responsible for their condition. The custodian, prior to the accident, received a complaint that the railing on the third floor was defective. On examination he found this railing to be rotten at the post and at the same time discovered a similar defect in the railing on the fourth floor. He tried to repair each of the railings by affixing strap iron. However, the fastening of the fourth floor railing was still weak so that "a child could have moved it at the post end." The custodian notified the manager of the building of the condition of the railing the next time the manager came out, but he was in a hurry, assumed that the railing was all right, and did not examine it. The manager was expressly notified by one of the tenants as to the condition of the fourth floor railing. While he denies receiving this notice as to the fourth floor, he admits that some repair was made on a lower railing, and that the custodian asked him to look at the railing. The Ohio cases cited by appellant as requiring reversal upon the ground that the testimony as to the condition of the third floor railing was irrelevant do not apply to the present situation. The positive testimony of the custodian shows the presence of almost identical conditions in the railings, at the same time, and at substantially the same place, each producing or tending to produce a similar accident within a few weeks. Both the occurrence of the prior incident on the third floor and the very similar condition of the railings on the third and fourth floors tended to establish knowledge binding on the appelant through its agent who had charge of general repairs. F. W. Woolworth Co. v. Kinney, 121 Ohio St. 462, 169 N.E. 562.

 The fact that the custodian testified that a complaint was made to him of the insecurity of the third-floor railing prior to the accident involved in this litigation does not constitute ground for reversal. Admissibility of the evidence is to be determined by the rules heretofore applied in equity cases in United States courts or by the rules of evidence applied in state courts. The statute or rule which favors the reception of the evidence governs. Rule 43(a), Federal Rules of Civil Procedure. This rule has liberalized the admissibility of evidence as much as possible by providing always for the widest rule of admissibility whether under federal law or federal equity practice or state rule. Dellefield v. Blockdel Realty Co., 2 Cir., 128 F.2d 85. Appellant claims that this testimony was pure hearsay and that its admission constituted prejudicial error; but the evidence was admissible as bearing upon the question of notice. The landlord's knowledge of the dangerous condition of the railing was an issue in the case. Testimony that prior to the accident a complaint as to a defective condition in the third-floor railing similar to that alleged to have caused the accident had been made to the custodian and by him communicated to appellant's agent, was relevant and admissible. This is the federal rule in this circuit. Evans v. Erie R. Co., 6 Cir., 213 F. 129, 133; Illinois Central R. Co. v. Sigler, supra, 122

F.2d at page 284. In the latter case evidence was admitted as to prior accidents at a railroad crossing concerning which no eyewitness testified, and this was held admissible on the question of notice. Cf. Langham v. Jackson, 211 Ala. 416, 100 So. 757; Carillo v. Murray & Layne Co., 25 Ariz. 303, 216 P. 689; Paul v. Thompson, 118 Ga. 358, 45 S.E. 387; Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S.W. 899.

■ The statement of the custodian that Petticrew, his superior, to whom he reported the incident on the third floor, said he did not have time to examine the railing, was clearly admissible. Since the custodian had repaired the railings on both floors, the failure of Petticrew, who was in general charge of repairs, to examine the work done by the custodian, was evidence of negligence. His declaration that he did not have time to do this was binding on the appellant, and admissible on the issue of notice. Kimbark v. Timken Roller Bearing Co., 115 Ohio St. 161, 167, 152 N.E. 385. Moreover, the admission of the testimony was in no way prejudicial, for Petticrew himself stated that he did not examine the railing because he was in a hurry.

■ In view of appellant's statement in its answer that it operated the building, its contention that it had no control over the stairway and the landing and no possession is clearly without merit. In Ohio the landlord is liable to an invitee for lack of ordinary care in the maintenance of common stairways, halls and landings, in buildings which it operates. Davies v. Kelley, 112 Ohio St. 122, 146 N.E. 888; Prendergast v. Ginsburg, 119 Ohio St. 360, 363, 164 N.E. 345; Rice v. Ziegler, 128 Ohio St. 239, 190 N.E. 560; 24 Ohio Jurisprudence § 208.

■ The District Court did not err in permitting witnesses to testify as to facts from which it could be inferred that Petticrew was the agent of the appellant in the management of the premises and receiving notice of defective condition. Pugh v. Akron-Chicago Transportation Co., 64 Ohio App. 479, 489, 28 N.E.2d 1015. Since the appellant operated the building, it must have operated it through some agent. While appellant denies that Petticrew was acting for it, and points to the fact that Petticrew was employed by one Shimmon, a so-called "property manager," appellant produces no one except Petticrew who had any connection with operation of the building. The tenants saw only the custodian and Petticrew with reference to rents and all matters connected with the apartment house. Petticrew visited the building periodically to see what was needed and to give all necessary orders. He authorized major repairs and was in general charge of the apartment house. If appellant operated its property through someone other than Petticrew, it was its duty to produce that person. Appellant states that Shimmon handled certain properties, including this apartment house, as property manager on a fee or commission basis. Clearly if appellant chose to operate the apartment house through Shimmon, although he was not exclusively its agent, then Shimmon's employee Petticrew represented appellant in supervision of the apartment house. The jury was justified in concluding that Petticrew was in charge of the operation, and as such authorized to receive notice binding on the appellant.

Appellant has cited more than one hundred Ohio decisions of the Supreme Court and inferior courts, most of which have no bearing on this case. In Hall v. Ferro-Concrete Construction Co., 71 Ohio App. 545, 50 N.E.2d 556, which involved a death alleged to be due to failure to provide a guard rail around a hatchway, no one saw the decedent fall. Here there is positive testimony from the appellee and from a disinterested witness as to appellee's fall, and the simultaneous fall of the railing.

In Shaffer v. S. S. Kresge Co., 24 O.L.A. 9, it was declared that notice to a janitor who had nothing to do with repairs did not bind the owner. Here notice was given not only to the custodian, who made minor repairs, but to Petticrew, who was in charge of all repairs.

It would serve no useful purpose further to discuss these multitudinous cases, so clearly differentiated on the facts.

■ As to the claim of error in the charge, the principal contention is that the court charged upon a statute inapplicable to the case, namely, the so-called "frequenter statutes," Sections 871-13, 871-15, 871-16 and 871-17, General Code of Ohio. We question whether these statutes apply to the present situation. While they have not been construed by the Supreme Court of Ohio, their context and phrasing indicate that they were meant to apply to employment in a place of a character different from that involved here. Cf. Popowich v. American Steel & Wire Co., 6 Cir., 13 F.2d 381. However, the appellant did not object to the court's instructions on this point and

cannot assign the giving of them as error. Rule 51, Rules of Civil Procedure; Reeve Bros. v. Guest, 5 Cir., 131 F.2d 710, 712; Williams v. Powers, 6 Cir., 135 F.2d 153, 157.

The appellant clearly owed the duty of exercising ordinary care, for the appellee was an invitee, and not a trespasser. Hozian v. Crucible Steel Casting Co., 132 Ohio St. 453, 9 N.E.2d 143, 112 A.L.R. 333; Kelly & Sons v. Howell, 41 Ohio St. 438; McGinty v. Pennsylvania R. Co., 6 Cir., 6 F.2d 514; American Steel & Wire Co. v. Sieraski, 6 Cir., 119 F.2d 709, 710. Upon this point and upon the principal features of the case the court charged correctly and in detail. We conclude that no reversible error exists in the charge.

In view of the numerous and serious injuries sustained by the appellee, we think that the verdict is not excessive.

Other errors alleged have been considered, but as none of them calls for reversal, the judgment is affirmed.