CARROLL, DONALD K., Acting Chief Judge
(dissenting).
I feel constrained to dissent from the majority opinion principally because I believe, from my examination of the trial record, that the jury denied the mother any recovery for her pain and suffering resulting from her minor son’s death because of the testimony elicited by the defense that her husband was unfaithful to her.
The dominant theme of the defense at the trial was the fact that the father was living with another woman at the time of his son’s death and prior thereto. The defense continually harped on this theme in its questioning of the witnesses over the objections of the plaintiff, which objections were overruled by the trial court. There was no showing in the evidence that the love of either the father or mother for their deceased son had lessened because of the father’s infidelity to her.
The evidence of the husband’s infidelity was not,in my opinion, relevant to any issues properly before the jury at the trial.
On the other hand, the father and especially the mother were seriously prejudiced by the defense’s constant harping on the fact of the father’s infidelity to the mother. Ordinarily in a case like the present the prejudicial effect of evidence must be inferred from the record, but here there was a direct showing in the record that the jury were considering denying damages to her because of the father’s infidelity. After the jurors had retired to the jury room to consider the verdicts, the jurors returned to the courtroom and the foreman thereof stated that the jury would like to ask some questions. One of these questions was: “Can we make a recommendation about the disbursal of these amounts?” The court responded: “You have these two claims. One brought by an individual and one is as administrator of an estate.” The jury then retired to resume their deliberations in the jury room.
The above-quoted inquiry from the foreman of the jury reveals, I think, that the jurymen were concerned with the question of awarding the husband an amount for his wife’s mental pain and suffering with the thought that, if the money was given to the unfaithful husband, he might take the money awarded for her mental pain and suffering over the loss of her son and use the money for the benefit of himself or, perhaps, his girlfriend, or in some other way prevent the mother from receiving compensation for her said mental pain and *463 suffering. I feel that this demonstrated that there was some prejudicial effect in the jurors’ minds caused by the admission of the testimony concerning the unfaithfulness of the husband.
Even if all the above testimony about the husband’s infidelity were remotely relevant to the issues before the jury, which I do not think it was, the prevailing rule in this country is as follows:
“Confusing, misleading, or prejudicial evidence. Evidence, although logically relevant, may and should be excluded where it will have an undue tendency to confuse or mislead the jury, particularly where the issues are close, as where it would draw into the case issues foreign to the litigation or would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury. . . .” (emphasis su-plied) 31A C.J.S. Evidence § 157; pages 436 and 437.
The universality of the just-quoted rule is confirmed in the new authoritative Florida Evidence by Spencer A. Gard (author of Jones on Evidence, 5th edition). One of the established rules of Florida evidence is stated therein (page 130) as follows:
“Relevant evidence, though not barred by an exclusionary rule, may, nevertheless, be rejected by the trial judge if in his sound discretion he finds that the probative value of the evidence is slight and is outweighed by its tendency to unduly prejudice, mislead, or confuse the jury.”
In his additional comment on this rule in the 1971 Cumulative Supplement to his work (pages 18 and 19), Gard says:
“Sometimes an exclusionary principle which bars relevant testimony because of its prejudicial quality is not a matter of discretion but a fixed rule of evidence. Thus in Florida the courts have given wide acceptance to the view that it is reversible error and a play for the sympathy of the jury, to permit the identification of the victim of a crime by a member of the deceased’s family where other witnesses are available. Like the best evidence rule this is a rule of preference, but nonetheless of exclusionary effect. See Furr v State (1969, Fla App) 229 So 2d 269. But the principle was rejected as inapplicable to identifying the victim’s outcry in a rape case. See Roundtree v State (1969, Fla App) 229 So 2d 281 (citing cases in support of the rule and the exception).
“In Young v State (1970, Fla) 234 So 2d 341, the Florida Supreme Court recognized its appellate responsibility to review trial court discretion in the admission of inflammatory photographs, and found the admission of forty-five photographs, twenty-two of which were gory and gruesome in nature, to be reversible error as unduly prejudicial, thus finding that the discretion of the trial court was not within ‘reasonable limits.’ The opinion quotes the opinion in Leach v State (1961, Fla) 132 So 2d 329, cert den 368 US 1005, 7 L Ed 2d 543, 82 S Ct 636, reh den 369 US 857, 8 L Ed 2d 16, 82 S Ct 938, as stating the correct rule.”
For many years the courts of Florida have recognized and applied this prevailing rule. In Perper v. Edell, 44 So.2d 78 (Fla.1949), the Supreme Court of Florida said:
“We conceive the rule to be that, if the introduction of the evidence tends in actual operation to produce a confusion in the minds of the jurors in excess of the legitimate probative effect of such evidence — if it tends to obscure rather than illuminate the true issue before the jury —then such evidence should be excluded.”
Again, in Seaboard Air Line Railroad Company v. Ford, 92 So.2d 160 (Fla.1957), our Supreme Court recognized the principle that relevant evidence may be inadmis *464 sible when outweighed by its prejudicial effect, as follows:
“We have considerable doubt that the evidence in question could be considered relevant, within the above rule; cf. Plough v. Baltimore & O. R. Co., 2 Cir., 1947, 164 F.2d 254; New York Life Ins. Co. v. Seighman, 6 Cir., 1944, 140 F.2d 930. But even if it was remotely relevant, it was still merely cumulative, as there was other evidence amply sufficient to prove the defendant’s knowledge of the dangerous propensities of Nalco. The tendency of the evidence in question to prejudice the jury against the defendant far outweighs any remote eviden-tiary value; and, since it was merely cumulative, we think the trial judge abused his discretion in admitting it into evidence. The error was not harmless, when considered in connection with the other errors referred to herein.” (emphasis supplied.)
I am greatly concerned that the majority in its opinion may be construing the language it quotes from Williams v. State, 110 So.2d 654 (Fla.1959) as constituting a departure from the above established rules and as meaning that, if the evidence is relevant, it is admissible, no matter how prejudicial that evidence may be. I cannot agree with this construction, for, if it were correct, court trials could easily become mud-slinging contests, with each party, under the guise of relevancy, trying to prejudice the other’s case. Such a rule would run counter to the fundamental purpose of our court system — to do justice under law. In my opinion, the language quoted in the majority opinion from the Williams case can be reconciled to the prevailing rule, as discussed above, by considering that prejudicial effect as a “specific rule of exclusion.”
The judicial problem posed by this appeal can, in my opinion, best be resolved by following the procedure outlined by the Florida Supreme Court in the recent case of Garner v. Ward, 251 So.2d 252 (Fla.1971). Like in the case at bar, the application of Sections 768.01, 768.02, and 768.03 (the wrongful death statutes) was involved in Garner. The decedent-father had been twice married, having children by his first marriage who remained dependent on him for their support. Upon his death the statutory cause of action survived to his then spouse, the second wife, who filed suit. The first wife attempted to intervene individually and on behalf of the dependent minor children, but the trial court denied intervention. This court affirmed the order of denial, which had the effect of leaving the said children without remedy for their loss of support.
The question presented in the Garner case, said the Supreme Court, was “whether the language of Fla.Stat. § 768.02, F.S. A., should be given literal application, even though the result is unquestionably harsh in many cases; or whether it should be construed and applied in light of its remedial purpose.”
The Supreme Court in Garner then discussed the conflicting Florida decisions on the question presented in that case and concluded:
“When the decisions are examined which have applied Fla.Stat. §§ 768.01, 768.02 and 768.03, F.S.A., to broken families or families in which step-relationships exist, the conflicts clearly appear. Some of these decisions have applied literally the statutory language as to priorities in persons — often with harsh results that have generated judicial protest. Other decisions have recognized that strict application as to families broken or in which step-relationships exist may be unjust, and have applied the statute remedially in order to implement its purpose of family protection.” (emphasis supplied.)
In the conclusion of the Supreme Court’s opinion in Garner, that court said:
“Under the factual circumstances of cases such as this, all persons who suffer loss as a result of the wrongful death *465 and who are entitled to recover are proper parties. All such persons may join, or upon motion by the defendant should be joined by the court if it has jurisdiction. Any person may at any time be made a party if his presence is proper to a complete determination of the cause. Rule 1.210(a), Florida Rules of Civil Procedure (1967) 30 F.S.A. Rule, 1.250(c), which vests in the trial court authority to add parties on motion or its own initiative, is peculiarly useful in actions such as that sub judice. Also, see Rule 1.270(a), authorizing consolidated trial of any and all issues. In these cases, the damages suffered by each survivor entitled to sue must be separately proved and separately assessed.”
.In my opinion, the letter and spirit of the Garner decision apply in the present case, where there is a broken home in fact, although the marriage had not been legally dissolved.
In fairness to the trial court in the case at bar, I mention the fact that the opinion in the Garner case was filed in the Supreme Court on July 7, 1971, while the trial court’s order in the case at bar dismissing the mother as a party plaintiff on the defendants’ motion was entered on September 29, 1969, so the trial court could not of course, be charged with notice of the above Garner decision (opinion filed on July 7, 1971).
What I have written in this opinion is not intended in any way to reflect upon the trial judge, who is known as one of the ablest and most conscientious in this appellate district. When he entered the order dismissing the mother as a party plaintiff, that order apparently led to the introduction of the prejudicial testimony which obviously affected the consideration of the jury — for the jury awarded damages in the administrator’s action but denied any award to the mother and father for their pain and suffering, evidently because the husband was unfaithful to the mother.
In the interest of justice to all concerned, I would reverse the judgments appealed from herein, and remand the causes with directions for a new trial on all issues, after reinstating the mother as a party plaintiff in the action for pain and suffering in accordance with the Garner doctrine.